UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **ALFREDO VALENTIN**<br>**6 LAWTON STREET**<br>**MANCHESTER, NH 03102**<br><br>　　　**Plaintiff,**<br><br>　　v.<br><br>**CITY OF MANCHESTER**<br>**ONE CITY HALL PLAZA**<br>**MANCHESTER, NH 03101,**<br><br>**BRIAN LEVEILLE**<br>**405 VALLEY STREET**<br>**MANCHESTER, NH 03103,**<br><br>**CHRISTOPHER SANDERS**<br>**405 VALLEY STREET**<br>**MANCHESTER, NH 03103,**<br><br>　　　**Defendants.** | Case No.: 1:15-cv-00235<br><br>**COMPLAINT &**<br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

Alfredo Valentin sues the City of Manchester and two of its police officers, Brian Leveille and Christopher Sanders, for arresting him for audio recording the officers' refusals to give him a search warrant for his residence.

# INTRODUCTION

1. Alfredo alleges that Manchester, Leveille, and Sanders violated his clearly established constitutional right to free speech; engaged in an unreasonable search and seizure of his domicile; arrested him on a felony charge without probable cause; charged him with the

felony crime of wiretapping in retaliation for exercising his First Amendment rights and for asking to see a search warrant of his home; publishing false, misleading, and defamatory statements about the unlawful arrest; and proximately causing Mr. Valentin to lose his job which he held for 11 years.

## JURSIDICTION AND VENUE

2. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's federal causes of action arising under 42 U.S.C. § 1983 *et seq*.

3. This Court has supplemental jurisdiction over the Plaintiff's state claims pursuant to 28 U.S.C. § 1367 because the state law claims arise from a common nucleus of operative fact.

4. This Court may exercise personal jurisdiction over all Defendants because they reside or do business within the District of New Hampshire.

5. Proper venue lies in the District of New Hampshire because a substantial part of the events giving rise to Plaintiff's claims occurred in Manchester, New Hampshire. 28 U.S.C. § 1391(b)(2).

## PARTIES

6. Alfredo is an adult citizen and resident of Manchester, New Hampshire. Alfredo served in the United States Marine Corps until he was honorably discharged. For 11 years prior to this complaint, Alfredo worked at Longchamps Electric, Inc. as an accounts payable manager.

7. City of Manchester is a municipal corporation located in Hillsborough County and is the public employer of the Police Officer Defendants.

8. Brian Leveille is a police officer employed by Manchester's police department.

9. Christopher Sanders is a police officer employed by Manchester's police department.

10. Leveille and Sanders together are referred to as the "Police Officer Defendants."

## **BACKGROUND**

11. Alfredo owns his home at 6 Lawton Street in Manchester. His property is subject to an unpaid mortgage. From time to time, Alfredo has taken in renters to reduce his housing expenses.

12. In December 2014, a friend of Alfredo's told him that an acquaintance, Christopher Chapman, was looking for a place to rent. Chapman began renting a room from Alfredo on December 15, 2014. Chapman was often gone during the day; came and went as he pleased; and Alfredo thought nothing suspicious of it. Chapman's girlfriend was staying with Chapman, but Chapman kept to himself.

13. Since before Chapman moved in to Alfredo's residence, Manchester Police had been investigating Chapman for approximately five months for heroin-related offenses.

14. On February 27, 2015, Manchester Police obtained a search warrant for Chapman's domicile at 6 Lawton Street.

15. On March 3, 2015, the day before a search warrant was executed, Manchester police surveyed the 6 Lawton Street property. Manchester police observed no sign of firearms, dangers on the property, or that any of Chapman's suspected accomplices were present.

16. Early on the morning of March 4, 2015, Alfredo left for work at Longchamps Electric. Chapman, Jaz Funkhouser (Chapman's girlfriend) and another woman were still at the property.

17. A brief time later, Chapman left the property to attend a parole violation hearing at the

Hillsborough Superior Court Northern Division.

18. At 9:00 A.M. and still at the Superior Court, the Manchester Police Department arrested Chapman on controlled substance charges.

19. Shortly after Chapman was arrested, Manchester Police executed the search warrant at 6 Lawton Street. Police did not ring the doorbell, knock on the door, or announce themselves as police.

20. Instead, Manchester Police conducted a "no-knock" raid, firing incendiary devices through the property's windows, kicking in the doors, and entering the property SWAT-style with semi-automatic weapons—damaging property, terrifying the two women who were still in the house, and creating an unjustifiable risk of accidental death or injury.

21. At 10:30 A.M., Alfredo received a phone call at work. A neighbor a few blocks away from Alfredo's property found Alfredo's dog wandering the neighborhood. The neighbor called the phone number on the dog's tags. The neighbor reached Alfredo's cellular telephone.

22. Alfredo thought his dog must have escaped. Alfredo told his neighbor he would leave work and retrieve his dog right away. The neighbor mentioned there were police in the area of Lawton Street, but Alfredo thought nothing of it. Alfredo retrieved his dog from the neighbor.

23. Taking his dog home to 6 Lawton Street, Alfredo saw two unknown cars parked in his driveway. Alfredo saw his home had signs of forced entry and damage.

24. Two men dressed in flannel shirts were standing near the property. Alfredo quickly walked around them and entered his home. Upon crossing the threshold, additional, unidentified men in the home quickly approached Alfredo and yelled at him to get out of

the home. Alfredo simultaneously demanded to know what they were doing.

25. One of the intruders—still not known by Alfredo to be police—became verbally confrontational to Alfredo and told him to leave. Alfredo insisted that they tell him what they were doing and that Alfredo was going to call the police.

26. After a verbal exchange, one of the men said that he was a police officer. Alfredo demanded to see a badge. The officer refused to show his badge.

27. Alfredo insisted that he see a badge and get the man's name. After repeated demands, the man said, "You want to see a badge? Fine. Here's my badge!" The officer briefly flashed a metallic badge and quickly concealed it. Alfredo asked to speak to a supervising officer.

28. Sanders approached Alfredo and stated the property was being searched and that he had a warrant.

29. Alfredo asked to see the search warrant.

30. Sanders refused to produce the search warrant. Sanders claimed that they had a warrant, but that they would not give it to Alfredo. When Alfredo asked to see the warrant again, Sanders became verbally demeaning. Valentin asked to speak to Sanders' supervising officer. The supervisor told Alfredo to "come back in an hour." Alfredo left the scene.

31. One hour later, Alfredo returned to his home, parking in his next-door neighbor's driveway. When Alfredo exited his vehicle, he turned on the audio recording function of his Samsung S5 phone. Alfredo openly held the phone in front of him at chest level.

32. Sanders and Laveille approached Alfredo. Alfredo asked to see the search warrant for his home. The three men were standing in the street in front of Alfredo's house.

33. Despite Alfredo's continued requests, the officers refused to produce the search warrant.

34. While Alfredo was speaking to Leveille about the search warrant, Sanders quietly circled behind Alfredo and looked at Alfredo's phone. Sanders looked at the phone's screen and asked, "Are you recording?"

35. Leveille immediately cease his other conversation and demanded to know whether Alfredo was recording.

36. Alfredo confirmed that he was recording.

37. Leveille stated that Alfredo could not record.

38. Alfredo stated that he knew his rights to record police in a public place. Alfredo stated that he knew of the "Glik case" and that it was in the First Circuit.

39. Leveille stated that things have changed since then. Leveille stated that the officers could arrest Alfredo.

40. Then, Leveille and Valentin had a spirited discussion about whether Valentin could record. Tired of the discussion, Leveille stated that he was done and that Alfredo should leave. The conversation ended. Alfredo returned to his vehicle.

41. Leveille and Sanders conferred briefly.

42. Alfredo was within arm's reach of his car when he heard one of the officers yell out: "Mr. Valentin, stop! Turn around."

43. Mr. Valentin stopped, turned around, and asked for what. Leveille stated, "We're going to arrest you for wiretapping."

44. The Police Officer Defendants immediately tried to seize Alfredo's cellular phone.

45. To prevent the destruction of the audio recordings, Alfredo held the phone above his head and hit the "lock" button on the phone. Without the correct code, the phone's data could

not be accessed and erased without non-immediate technical efforts.

46. The officers became visibly angry. Alfredo lowered his arm and the officers seized the phone from Alfredo's hands.

47. Neither Leveille nor Sanders had a reasonable expectation that, standing in the street, they were not subject to recording by any member of the public.

48. A person standing in a public street in broad daylight is not in a circumstance which justifies a reasonable belief that any verbal statements publicly uttered could not be recorded by any nearby member of the public.

49. At the time of Alfredo's arrest, neither Leveille nor Sanders had probable cause to believe that Alfredo committed the crime of felony wiretapping in violation of RSA 570-A:2, I.

50. Alfredo was handcuffed and made to stand in the street for about 15 minutes until a Manchester Police transport could arrive.

51. The police officers paraded Alfredo down the street past several neighbors homes. A neighbor snapped a photograph of five Manchester Police officers putting Alfredo into the van. The photo would later end up publicly shared on social media.

52. Alfredo was transported to Manchester Police Department where he was confined to a holding cell. He was released approximately three to four hours later on bail.

53. Manchester Police charged Alfredo with felony wiretapping, a class B felony in violation R.S.A. 570-A:2, I. The offense is punishable with between 3.5 and 7 years in the state prison and a fine of up to $2,000.

54. The criminal complaint was signed on the behalf of Manchester Police Chief David Mara.

55. The criminal complaint stated that Alfredo "was observed recording the conversation and

did not have permission to do so nor had Valentin advise (sic) that they were being recorded."

56. Alfredo was *never* charged with any offense related to controlled substances or any other offense (e.g. disorderly conduct). Alfredo was not a suspect in the Chapman investigation.

57. Shortly after Alfredo's arrest, Manchester Police, pursuant to its policies and procedures, published a press release stating that Alfredo was arrested in connection with the eight-month heroin investigation which yielded over 300 grams of heroin and $16,000 cash.

58. The Manchester Police's press release was hastily and recklessly written. A reasonable person would interpret Manchester's press release as stating that Alfredo was part of the heroin drug ring which was under investigation for eight months.

59. Manchester published the press release. News stations and newspapers picked up the story immediately. At least one major media source in New Hampshire falsely reported that Alfredo was part of an interstate drug ring and that Alfredo was arrested with over 300 grams of heroin and over $16,000 cash in his possession. This was absolutely false.

60. Two days later, Alfredo was terminated from his 11 year position at Longchamps Electric. Alfredo was an accounts payable manager, a position of substantial trust within the company, with the authority to use the company seal.

61. Alfredo's employer said that given the recent press coverage, Longchamps could not have someone working for them with "that kind of felony charge."

62. At the time of his termination, Alfredo earned approximately $45,000 per year. In addition, Alfredo received medical, dental, and prescription benefits; eligibility in a 401(k) plan; and he had two weeks of accrued vacation time. All were lost when his employment

was terminated.

63. The deprivation of medical and prescription coverage is especially harmful, because Alfredo suffers from chronic asthma and diabetes. Without his coverage, he cannot afford his $600-month prescription medications.

64. As of the filing of this suit, Alfredo has exhausted his medication and his medical conditions are untreated. (For now, Alfredo must rely on his VA benefits, but the VA does not cover all of his medications.) His untreated diabetes has worsened without medication. Since March, Alfredo has been in the emergency room three times because of his untreated medical conditions.

65. On April 9, 2015, the Manchester *nolle prossed* the criminal charge against Alfredo.

66. Subsequently, the Manchester Police Department has nonetheless declined to disclose records and reports about Alfredo's arrest.

67. The Manchester Police Department has declined to return Alfredo's Samsung S5 cellular phone. Manchester has argued that Alfredo may nonetheless be indicted on a felony wiretapping charge.

68. As a direct a proximate cause of the Defendants' unlawful conduct, Alfredo has suffered a loss of the gainful employment he had held for 11 years and all of its attendant pay, benefits, and opportunities for future advancement. Alfredo has suffered extreme emotional distress, emotional suffering, and mental anguish. Alfredo has been made the object of scorn and public ridicule by his neighbors and others in the community. Others in the community have even Alfredo described as a "murderer" for bringing heroin into Manchester. Parts of Alfredo's home have been damaged by the unreasonable search.

69. As of June 17, 2015, Manchester disputes that the Manchester Police Department violated Alfredo's constitutional rights by arresting him and seizing his phone. Manchester maintains that Alfredo knew that his conduct was unlawful.

## COUNT I
### 42 U.S.C. § 1983 – FIRST AMENDMENT

70. All prior paragraphs are incorporated.

71. The Police Officer Defendants violated Alfredo's rights under the First and Fourteenth Amendments to the U.S. Constitution when they arrested him for wiretapping in direct retaliation for using his telephone to record police officers doing their public jobs in a public place.

72. The defendants violated Alfredo's federal constitutional rights under the First Amendment to the U.S. Constitution when they seized Alfredo's phone so that he could not publish the contents of any audio recordings.

73. The defendants violated Alfredo's federal constitutional rights under the First Amendment to the U.S. Constitution when it charged him and caused him to be charged with felony wiretapping in retaliation for using his telephone to audio record Leveille and Sanders performing their public job in a public place.

74. The Police Officer Defendants acted with intentional disregard for Alfredo's clearly established constitutional rights under the First Amendment.

75. Manchester's rubberstamping of criminal complaints for wiretapping, unsupported by probable cause, evidences a custom and practice in the Manchester Police Department of using felony wiretapping charges under RSA 570-A:2, I to intimidate and chill citizens' First Amendment rights.

76. Accordingly, the Defendants violated Alfredo's rights under the First Amendment of the U.S. Constitution to be free from unreasonable seizure.

## COUNT II
## 42 U.S.C. § 1983 – FOURTH AMENDMENT

77. All prior paragraphs are incorporated.

78. The Police Officer Defendants violated Alfredo's federal constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution when they seized Alfredo's telephone pursuant to an arrest without probable cause.

79. Manchester's seizure of the Alfredo's phone without probable cause in order to obtain exclusive possession of the electronically stored information evidences Manchester's custom and practice of seizing citizen's personal property without cause to deprive the person of information stored on those electronic devices.

80. Accordingly, the defendants violated Alfredo's rights under the Fourth Amendment of the U.S. Constitution to be free from unreasonable seizure.

## COUNT III
## 42 U.S.C. § 1983 – FOURTH AMENDMENT

81. All prior paragraphs are incorporated.

82. Manchester violated Alfredo's federal constitution rights under the Fourth and Fourteenth Amendments to the U.S. Constitution when the Police Officer defendants performed an unreasonable search of the 6 Lawton Street property with unreasonable and reckless force, including the smashing of doors, windows, and detonation of incendiary devices.

83. Manchester has a written policy of performing a pre-search assessment, but has an actual

practice of ignoring the results of those assessments and using an inappropriate and unreasonable amount of force. Manchester's use of unnecessary destructive force was not part of a reasonable search of Alfredo's home.

84. Accordingly, the Defendants violated Alfredo's rights under the Fourth Amendment of the U.S. Constitution to be free from unreasonable searches.

## COUNT IV
## NEGLIGENT FAILURE TO TRAIN

85. All prior paragraphs are incorporated.

86. Manchester has a duty to all residents of Manchester to train its police officers not to violate the clearly established constitutional right of its citizens.

87. Manchester breached that duty by failing to train its officers about the clearly established constitutional rights of citizens to record the activities of public officers in public places.

88. Manchester breached that duty by failing to train its officers not to abuse the power to arrest and initiate criminal proceedings to discourage the exercise of constitutionally protected First Amendment activity.

89. As a direct and proximate cause of Manchester's breach of its duty to train, Leveille and and Sanders arrested Alfredo for felony wiretapping.

90. As a result, Alfredo has suffered serious damage to his reputation; humiliation, embarrassment, mental and emotional anguish and distress; and significant economic injury.

## COUNT V
## FALSE IMPRISONMENT

91. All prior paragraphs are incorporated.

92. Leveille, Sanders, and three yet unidentified Manchester Police officers intentionally confined Alfredo when they put Alfredo in handcuffs, put him in a transport van, and placed him in a holding cell.

93. The confinement was unlawful because police officers had no probable cause to believe that Alfredo committed the criminal offense of wiretapping.

94. Alfredo was aware of his confinement.

95. Accordingly, the Police Officer Defendants falsely imprisoned Alfredo.

## COUNT VI
## LIBEL *PER SE*

96. All prior paragraphs are incorporated.

97. Manchester made false and defamatory statements concerning Alfredo when it published a press release suggesting that Alfredo was involved in felony offenses surrounding a heroin drug ring.

98. Manchester published its statements very publicly and the statements were repeated by newspapers and television news programs.

99. Manchester acted recklessly and negligently when it published its statements associating Alfredo with a heroin drug ring.

100. Manchester's statements have exposed Alfredo to scorn, public ridicule, and embarrassment. Manchester's statements reflect poorly on Alfredo's character, leading any ordinary reader to believe that Alfredo is an untrustworthy drug dealer and is responsible for crime and overdose deaths in New Hampshire.

101. Manchester's false and defamatory statements have caused Alfredo significant economic and emotional injury, including serious damage to his reputation, humiliation,

embarrassment, mental and emotional anguish and distress.

## COUNT VII
## FALSE LIGHT

102.    All prior paragraphs are incorporated.

103.    Manchester very publicly placed Alfredo in a false light which would be highly offensive to a reasonable person when it recklessly published a press release which implied that Alfredo was arrested in connection with a heroin drug ring.

104.    Manchester knew or should have known that the wiretapping arrest was unlawful and was not directly related to Chapman's investigation. Manchester recklessly disregarded the false light which Alfredo would be placed in by publicly associating him with a heroin drug ring.

105.    As a result of this false light, Manchester's false and misleading statements have caused Alfredo significant economic and emotional injury, including serious damage to his reputation, humiliation, embarrassment, mental and emotional anguish and distress.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Alfredo Valentin respectfully requests this Court grant the following relief:

A. Monetary damages in an amount to be determined at trial and no less than $1,250,000;

B. Costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b).

C. Any other relief that is just or equitable.

Respectfully submitted,

Alfredo Valentin,

|  |  |
|---|---|
|  | By his attorney, |
| Date:   June 19, 2015 | /s/ Brandon D. Ross |
|  | Brandon D. Ross |
|  | NH Bar No. 19881 |
|  | B.D. Ross Law Office |
|  | 1181 Elm Street, Suite 202 |
|  | Manchester, NH 03101 |
|  | p: (603) 369-6465 |
|  | f: (603) 369-6465 |
|  | e: brandon@bdrosslaw.com |

## DEMAND FOR JURY TRIAL

Plaintiff Alfredo Valentin requests a trial by jury on all issues triable by jury.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date:   June 19, 2015 | /s/ Brandon D. Ross |
|  | Brandon D. Ross |
|  | NH Bar No. 19881 |
|  | B.D. Ross Law Office |
|  | 1181 Elm Street, Suite 202 |
|  | Manchester, NH 03101 |
|  | p: (603) 369-6465 |
|  | f: (603) 369-6465 |
|  | e: brandon@bdrosslaw.com |